Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RICHARD GERBER** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **A&L PLASTICS CORPORATION**, *et al.*, <br><br> Defendants. | Civil Action No. 19-12717 (ES) (CLW) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is the motion of plaintiffs Richard Gerber and Elaine Williams (collectively, "Plaintiffs") for default judgment against defendants A&L Plastics Corporation ("A&L"), Schneider & Marquard, Inc., ("S&M"), and Michael O'Shea, Jr. (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). (D.E. No. 29 ("Motion")). Having considered Plaintiffs' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). As set forth below, the Court DENIES the motion.

**I.   BACKGROUND**

Plaintiff Richard Gerber was employed by Defendants as a maintenance mechanic from March 1989 through on or about September 13, 2018. (D.E. No. 1-5 ("Amended Complaint" or "Am. Compl.") ¶¶ 1–2).[1] Plaintiff Elaine Williams performed various work for Defendants (including as a machinist, a tool and die worker, an electronical discharge machine worker, and as a quality control employee) from about August 1987 through on or about December 31, 2018. (*Id.*

---

[1] The Court pulls the relevant background facts from the Amended Complaint. The Court has also reviewed Plaintiffs' declarations in support of the Motion, which largely contain the same factual allegations contained in the Amended Complaint. (D.E. Nos. 29-15 & 29-33).

1

¶¶ 4–5). Gerber was based out of A&L's Newton, New Jersey facility, and Williams was based out of S&M's Newton, New Jersey facility. (*Id.* ¶¶ 3 & 6). According to the Amended Complaint, defendants A&L and S&M were operated and managed as a common business entity, and they are "alter egos of one another." (*Id.* ¶ 25). Defendant Michael O'Shea is the alleged owner of both properties, and at all relevant times was an owner, shareholder, and the highest-ranking officer of both corporate defendants. (*Id.* ¶¶ 9 & 29–30).[2]

According to the Amended Complaint, in 2018, Defendants were pretending to withhold money from Plaintiffs' paychecks for health insurance and tax purposes but instead were keeping the money for themselves. Specifically, with respect to Plaintiffs' health insurance benefits, Plaintiffs allege that Defendants were seemingly deducting payments for health insurance premiums from Plaintiffs' paychecks, and Plaintiffs thus believed that they had valid health insurance coverage throughout their employment. (*Id.* ¶¶ 45–47). However, while Gerber was still employed with Defendants (in or around March and April 2018), he used medical services; after his separation from Defendants, Gerber received bills for those medical services and was informed that his health insurance policy was retroactively terminated effective on or about March 4, 2018. (*Id.* ¶¶ 48–51). Plaintiffs allege that they received no explanation for why the retroactive

---

[2] Although not subject to the instant motion, there were other corporate and individual defendants involved in this action when it was initiated. In addition to Defendants, Plaintiffs sued corporate entities American Ring and Tool Company and Tapered Tool and Die, LLC, as well additional individuals Lisa Swencak, Michele Sheaffer, and Christine Lamparelli. (Am. Compl. ¶¶ 7–43). Plaintiffs allege that American Ring and Tool and Tapered Tool and Die acquired S&M in May 2018 (although, there is no mention of an acquisition of A&L) and therefore were Gerber's employers from the date of acquisition through the date of his separation. (*Id.* ¶ 11). In other words, Plaintiffs allege that "[a]t all relevant times, A&L, S&M, American Ring and Tapered were joint employers of Plaintiff." (*Id.* ¶ 21). The additional individual defendants were allegedly, at all relevant times, owners and shareholders of S&M and A&L. (*Id.* ¶¶ 39–41). In August 2019, Plaintiffs stipulated to the dismissal of these additional defendants from the action. (D.E. Nos. 24–25).

The allegations about merger and joint-employer status, if true, make it hard to understand why American Ring and Tool and Tapered Tool and Die would appear in this action, while Defendants are in default. On the other hand, if no merged entity exists and all defendants are not actually joint employers, then Plaintiffs' allegations, which seek to hold all Defendants liable for acts as joint employers, are problematic. Nevertheless, the Court addresses the Motion as to the Defendants based on the allegations in the Amended Complaint, without speculation.

termination occurred. (*Id.* ¶ 52). According to Plaintiffs, Defendants pocketed Gerber's premium payments for their own benefit and to Gerber's detriment. (*Id.* ¶ 58). There are no similar allegations that Williams's health insurance policy was retroactively terminated, although she too alleges, without further elaboration, that her health insurance premiums were not used for their intended purpose. (*Id.* ¶ 75; *see also* D.E. No. 29-33 ¶¶ 18–23). And Plaintiffs both allege that, once their health insurance was terminated, they did not receive proper notice of termination. (Am. Compl. ¶¶ 75 & 80).

Regarding Plaintiffs' tax withholdings, Plaintiffs allege that, despite assurances from O'Shea that Defendants were paying the withholdings to the relevant taxing authorities, "Defendants never actually paid some of the withheld monies to the state and federal authorities." (*Id.* ¶¶ 63–66). Again, Plaintiffs allege that Defendants instead pocketed the funds that they claimed to be withholding for tax purposes. (*Id.* ¶ 66).

Based on the foregoing conduct, Plaintiffs allege the following federal claims (Counts I to III): (i) a violation of the Employment Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(b) for failure to provide a notice and election of coverage form and for using premium monies for unintended purposes; (ii) a violation of the Congressional Omnibus Reconciliation Act, 29 U.S.C. § 1161 *et seq.* ("COBRA") for Defendants' failure to provide Plaintiffs with information about their rights under COBRA; and (iii) violation of 26 U.S.C. § 7434 for the fraudulent filing of tax information returns. (Am. Compl. ¶¶ 73–88). In addition, Plaintiffs bring a number of claims arising under state law, including claims for fraud, quantum meruit, conversion, breach of the implied covenant of good faith and fair dealing, negligent infliction of emotional distress, prima facie tort, and respondeat superior (Counts IV to

X).  (*Id.* ¶¶ 89–124).  And an additional claim is lodged against fictitious parties (Count XI).  (*Id.* ¶¶ 125–128).

Plaintiffs filed their original complaint in state court on April 2, 2019, and filed the Amended Complaint on May 7, 2019.  (D.E. No. 1 ("Notice of Removal") ¶¶ 3–4).  On May 20, 2019, the now-dismissed corporate defendants removed the case to this Court, based on the presence of federal claims in the Amended Complaint.  (*See generally id.*).[3]  On June 27, 2019, Plaintiffs filed a request for entry of default against Defendants, and the Clerk of Court entered default on July 16, 2019.  (D.E. Nos. 17 & 18).  Shortly thereafter, on July 23, 2019, Plaintiffs filed their first motion for default judgment.  (D.E. No. 21).  By Order dated January 23, 2020, the Court denied Plaintiffs' first motion for default judgment because Plaintiffs failed to adequately address all of the factors necessary for the Court to determine whether it may grant default judgment.  (D.E. No. 28).  Plaintiffs filed a second motion for default judgment on March 4, 2020.  (D.E. No. 29).  Defendants have yet to appear in the action.

## II.   LEGAL STANDARD

"[E]ntry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).  However, it is preferable for cases to be disposed of on the merits whenever practicable.  *Id.* at 1181.  A district court may enter default judgment against a party who has failed to plead or otherwise respond to the action filed against him.  Fed. R. Civ. P. 55(b)(2).  To obtain a default judgment, a plaintiff must first request entry of

---

[3]   The Notice of Removal and a declaration attached thereto indicate that the removal was on consent of all defendants who had been formally served in the state action. (Notice of Removal ¶ 11; D.E. No. 1-3 ¶ 5).  It appears that Defendants were not part of the group of defendants who were served in the state action, as they were served after the removal on June 4, 2019. (D.E. Nos. 10, 12 & 13).  In any event, any procedural challenge Defendants may have had to the removal are non-jurisdictional and have been waived. *Balazik v. Cty. of Dauphin*, 44 F.3d 209, 213 (3d Cir. 1995) ("Failure of all defendants to join is a 'defect in removal procedure' within the meaning of § 1447(c), but is not deemed to be jurisdictional."); *Herbert v. Cty. of Essex*, No. 21-12491, 2021 WL 2457649, at *1 (D.N.J. June 16, 2021) ("A motion to remand based on a defect in the removal procedure must be brought within 30 days of the filing of the notice of removal, or the objection is waived.").

default by the Clerk of Court.  *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006).  Once default judgment is entered, a plaintiff seeking default judgment must then file a motion with the district court requesting relief.

"Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties." *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-0119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010).  Then, "the Court must determine (1) whether there is sufficient proof of service; (2) whether a sufficient cause of action was stated; and (3) whether default judgment is proper." *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (internal citations omitted).  To determine whether granting default judgment is proper, the Court must consider "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).

In making these determinations, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).  "While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing as long as the court ensures that there is a basis for the damages specified in the default judgement." *Days Inns Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25, 2015) (internal quotation marks and alterations omitted).

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

The Court has federal question jurisdiction over Plaintiffs' claims for violations of ERISA, COBRA, and over their claim pursuant to 26 U.S.C. § 7434 (Counts I, II, and III) because those claims arise under federal law. *See* 28 U.S.C. § 1331; (Am. Compl. ¶¶ 73–88). The Court has supplemental jurisdiction over Plaintiffs' remaining state-law claims. *See* 28 U.S.C. § 1367(a). However, based on the Amended Complaint and Plaintiffs' moving brief, it appears that the state-law claims are pled in the alternative to the federal claims and will only proceed if the federal claims fail. (D.E. No. 29-1 ("Mov. Br.") at 4–6). Yet, if the federal claims fail (and are dismissed as a result), then the Court would not be inclined to exercise supplemental jurisdiction over the state-law claims. And if the federal claims succeed, then, as Plaintiffs state, they will have recovered all of their damages and there is no additional recovery sought on the state claims. (*Id.*). Under these circumstances, the Court treads lightly with respect to its jurisdiction over the state law claims and begins its merits analysis with a substantive discussion of the federal claims. Because, as discussed in part III.C. *infra*, those claims are insufficiently pled[4], the Court will give Plaintiffs two options for proceeding—either with the filing of a proposed second amended complaint or with the dismissal of the federal claims and remand to state court.

#### B. Personal Jurisdiction and Service of Process

The Court also has personal jurisdiction over Defendants. The Court has general personal jurisdiction over defendants A&L and S&M because they are corporations operating with their principal places of business in New Jersey. (Am. Compl. ¶¶ 7–8); *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (With respect to personal jurisdiction of a company, "the place of

---

[4] Although the Court does not substantively address Plaintiffs' state law claims, the Court notes that pleading issues similar to those addressed within this Opinion seem to permeate those claims as well.

incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'") (alteration in original).  As to individual defendant Michael O'Shea, Plaintiffs state that that the Court has general personal jurisdiction over him based on his *residence* in the state of New Jersey (Mov. Br. at 1 & 2; Am. Compl. ¶ 28); however, Plaintiffs do not allege where O'Shea's is *domiciled. See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.").  There is, however, no challenge to the Court's assertion of personal jurisdiction over O'Shea, and there is no reason for the Court to question that O'Shea's residence in New Jersey is evidence of the fact that he is domiciled here.  And in any event, there is an alternative basis for the Court's exercise of personal jurisdiction—as described below, O'Shea was personally served with process within the state of New Jersey.  *Burnham v. Sup. Ct. of California*, 495 U.S. 604, 625 (1990); *Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co., Ltd.*, No. 20-6717, 2021 WL 960875, at *4 (D.N.J. Mar. 15, 2021) ("Personal jurisdiction can also be obtained through . . . in-state service on a defendant.").[5]

Finally, the Court is satisfied that there is sufficient proof of service.  Defendant O'Shea was personally served on June 4, 2019.  (D.E. No. 10); Fed. R. Civ. P. 4(e)(2)(A).  Defendants A&L and S&M were served via their registered agent—O'Shea—in accordance with Federal Rule of Civil Procedure 4(h)(1)(B).  (D.E. Nos. 12 & 13).

### C. Sufficiency of the Pleading and Meritorious Defense

Before granting default judgment, the Court must ensure that the plaintiff has stated a sufficient cause of action.  *See Wallace v. Fed. Employees of U.S. Dist. Court, EDPA*, 325 F. App'x

---

[5] Additionally, although Plaintiffs' legal argument focuses on general jurisdiction, in their preliminary statement, Plaintiffs seemingly make a case for specific jurisdiction, stating that the Court has jurisdiction because "[t]he underlying events occurred in New Jersey and the harm to the Plaintiffs has been felt in New Jersey." (Mov. Br. at 1).  This is another potential basis for personal jurisdiction.

7

96, 101 n.5 (3d Cir. 2009). The familiar Rule 12(b)(6) standard governs this determination. *See Mineo v. McEachern*, No. 12-1950, 2014 WL 2197032, at *2 (D.N.J. May 27, 2014) ("A court will deny a default judgment if the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6)."). Typically, the issue of whether plaintiff has a legitimate cause of action overlaps with the issue of whether the defendant has a meritorious defense. *See Ramirez v. Nacerima Indus.*, No. 10-1204, 2012 WL 3262466, at *1 (D.N.J. Aug. 8, 2012) ("[T]he Court finds that Defendants have a meritorious defense: namely, Plaintiff has failed to state a claim upon which relief can be granted."). These considerations, the Court finds, warrant denying Plaintiffs' Motion.

### i.    Group Pleading Issues

Preliminarily, the Court notes that group pleading issues permeate the Amended Complaint. First, the Amended Complaint lacks specificity as to the precise claims of each plaintiff. For instance, Plaintiffs often refer to "Plaintiff" in the singular, and it is not clear whether Plaintiffs intend to reference one particular plaintiff (and if so, which one) or both. Moreover, the majority of the factual allegations common to all counts seem to involve Gerber, but not Williams. (*See* Am. Compl. ¶¶ 48–54, 57–59, 63 & 65). And even where there are specific factual allegations relevant to Williams herself, there is no indication of how Williams was harmed by the alleged conduct. (*See id.* ¶¶ 69–72 (alleging how "Plaintiffs" have been harmed but only citing to specific ways Gerber was harmed)).[6]

The Amended Complaint similarly suffers from group pleading issues with respect to the conduct and liability of each defendant. Plaintiffs allege all claims against all Defendants and

---

[6]   In her declaration in support of the Motion, Williams claims to have experienced much of the same conduct that is alleged more generally in the Amended Complaint. (*See* D.E. No. 29-33 ¶¶ 20–28). But a subsequent filing cannot cure deficiencies in a complaint. *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) ("We do not consider after-the-fact allegations in determining the sufficiency of her complaint under Rules 9(b) and 12(b)(6)."). And even if after-the-fact allegations could solve the group pleading issue as to Plaintiffs, the Amended Complaint is insufficient for numerous other reasons discussed herein.

attribute the majority of the alleged conduct to "Defendants" generally, without explaining the relevant conduct of each defendant. (*See e.g.*, Am. Compl. ¶¶ 45–46, 57–62, 64, 67–69, 72, 75–77, 80, 82–83 & 86–87). Instead, Plaintiffs seem to rely on their allegations of the various relationships among Defendants—specifically that they are alter egos of one another, joint employers of Plaintiffs, and that the corporate veil may be pierced in this case—to hold them all liable. (*Id.* ¶¶ 25–27). But in the first instance, there are insufficient allegations as to which entity or individual is primarily liable for the conduct underlying each claim. *D'Addario v. Johnson & Johnson*, No. 19-15627, 2020 WL 3546750, at *6 (D.N.J. June 30, 2020) ("Plaintiffs' Complaint broadly alleges Defendants' misconduct but fails to allege the conduct for which each defendant is culpable."). Thus it is difficult to even begin to assess other theories of liability. Even if the Court could do so, the allegations in the Amended Complaint with respect to alter ego and corporate veil piercing liability are insufficient.

## ii. *Alter Ego and Veil Piercing Allegations*

While alter ego liability typically must be established by clear and convincing evidence and is "notoriously difficult" to prove, *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001), at the default judgment stage "the determination of alter ego liability. . . depends only on the allegations in the pleadings and does not require any fact finding at all," *Doctor's Assoc. Inc. v. Singh-Loodu*, No. 13-3030, 2014 WL 4988389, at *3 (D.N.J. Oct. 6, 2014).

Plaintiffs have not suggested what law governs the question whether alter-ego liability applies and if the Court can pierce the corporate veil. Because Plaintiffs have brought suit under both federal and state law, the Court outlines the requirements under Third Circuit and New Jersey law. *See Stone v. Winter Enterprises, P.C.*, No. 12-0465, 2012 WL 6155606, at *4 (D.N.J. Dec. 11, 2012).

"[U]nder New Jersey law, courts may pierce the corporate veil either to make a corporation's individual principals and their personal assets liable for the debts of the corporation or to make assets of the corporate entity available to satisfy the debts of a corporate insider so that the corporate entity and the individual will be considered one and the same." *Twin Cap. Partners, LLC v. Wickstrom*, No. 20-2869, 2020 WL 6747026, at *4 (D.N.J. Nov. 17, 2020) (internal quotation marks and citations omitted). And in order to state a claim for piercing the corporate veil under New Jersey law, a plaintiff must show the following: "(1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law." *Bd. of Tr. of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002); *see also Verni ex rel. Burstein v. Harry M. Stevens, Inc.*, 903 A.2d 475, 498 (N.J. Super. Ct. App. Div. 2006).

Furthermore, "the Third Circuit has fashioned a 'Federal rule,' which has been applied by judges in this District, for determining whether a corporation was functioning as an alter ego." *Travelers Prop. Cas. Co. of Am. v. Quickstuff, LLC.*, No. 14-6105, 2016 WL 7231605, at *9 (D.N.J. Dec. 14, 2016). The relevant factors for determining if a corporate entity is the alter ego of another include the following: whether the corporation has non-functioning corporate officers or directors; whether the corporation fails to observe corporate formalities; whether the corporation is merely a facade for the operations of the dominant shareholder or shareholders; whether the corporation is grossly undercapitalized for its purposes; whether the corporation fails to pay dividends; the absence of corporate records; and whether corporate funds are siphoned off by dominant shareholders. *Avatar Bus. Connection, Inc. v. Uni-Marts, Inc.*, No. 04-1866, 2005 WL 3588482, at *10 & n.11 (D.N.J. Dec. 29, 2005) (citing *U.S. v. Pisani,* 646 F.2d 83, 88 (3d Cir.1981)).

Of course, whether federal or state substantive law applies, Plaintiffs are subject to federal pleading standards, and "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are insufficient. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). And "[a] plaintiff must affirmatively plead both the factors for alter-ego liability and the factual underpinnings supporting those factors with respect to each individual defendant." *Richmond v. Lumisol Elec. Ltd.*, No. 13-1944, 2014 WL 1405159, at *4 (D.N.J. Apr. 10, 2014).[7]

The Amended Complaint fails in this regard. To start, Plaintiffs' allegation that A&L and S&M are alter egos of one another is too conclusory. Plaintiffs allege that these two entities were operated and managed as a common business entity and failed to observe corporate formalities; however, these buzzwords are not supported by any factual allegations.[8] The same is true regarding Plaintiffs' allegations pertaining to alter ego liability for O'Shea. (Am. Compl. ¶¶ 37–38). Plaintiffs largely recite certain factors relevant to the alter ego analysis; for example, they allege that O'Shea "failed to observe corporate formalities by comingling and intermingling funds." (*Id.* ¶ 35). But the only particularized allegation relating to these recitations is that, at certain points during Plaintiffs' employment, Plaintiffs were paid directly from O'Shea's personal bank account rather than through payroll. (*Id.* ¶ 36). This allegation alone is insufficient. *See Holzli v. DeLuca Enterprises*, No. 11-6148, 2012 WL 983693, at *2 (D.N.J. Mar. 21, 2012)

---

[7] In fact, the Third Circuit has held that "[w]hen a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to Fed. R. Civ. P. 9(b)." *Foodtown*, 296 F.3d at 172 n.10. Here, it is not entirely clear what Plaintiffs' theory of piercing the corporate veil is, but because the allegations in the Amended Complaint do not meet Rule 8's pleading requirements, the Court does not address Rule 9(b).

[8] It is also unclear which entity "dominated" the other. There are no allegations of any parent/subsidiary relationship, or that one entity owned the other.

11

("[A]side from Plaintiffs' conclusory statements summarizing the legal elements of their veil piercing claim, no specific factual allegations in the [c]omplaint support a claim of either alter ego liability or pierce the corporate veil and impose liability upon the individual [d]efendant."); *Mark IV Transp. & Logistics, Inc. v. Lightning Logistics, LLC*, No. 09-6480, 2012 WL 4506470, at *7 (D.N.J. Sept. 28, 2012) ("None of [p]laintiff's allegations rise to the level that would permit this Court to pierce the corporate veil and find that Evatt and Lightning were alter egos. . . . Plaintiff only attempts to allege that Evatt commingled funds and does not make allegations as to any of the other factors the Court must consider, such as a failure to observe corporate formalities, absence of corporate records or insolvency.").

Without sufficient allegations as to the conduct of each defendant and as to alter ego liability, it is not clear how the Court could hold any defendant liable for any of the asserted causes of action.  Even if it could, the Court finds that, in addition to these general pleading deficiencies, Plaintiffs' federal claims suffer from additional pleading deficiencies.

### iii.     Count I: ERISA

In Count I, Plaintiffs allege a violation of ERISA.  Specifically, Plaintiffs allege that they "should have been provided with notice and election of coverage form as required by [ERISA] § 502(a)(1)(B)" (codified at 29 U.S.C. § 1132(a)(1)(B)), and that Defendants "violated various provisions of ERISA[] by, among other things, not sending a COBRA notice and election of coverage form to Plaintiffs and not using premium monies for their intended purposes." (Am. Compl. ¶¶ 74 & 75).

It is unclear how Plaintiffs' allegations fit within the only ERISA provision cited, § 502(a)(1)(B).  Section 502(a)(1)(B) states that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under

the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Plaintiffs do not tie their factual allegations about lack of notice, election of coverage forms and unintended use of premium monies to any particular benefits or rights due to them under the terms of their plan. In fact, it is not even clear that the plan at issue here is an ERISA-governed plan. *See e.g., MedWell, LLC v. Cigna Corp.*, No. 20-10627, 2021 WL 2010582, at *6 (D.N.J. May 19, 2021) ("[I]t is unclear from the face of the [a]mended [c]omplaint which or how many patients had ERISA-governed plans, a prerequisite to any ERISA preemption argument."). Nor is it clear how this alleged conduct violated "various [other] provisions of ERISA," and it is not this Court's job to scour through ERISA to determine what type of ERISA claim Plaintiffs may be trying to assert.[9]

Additionally, as explained more generally *supra*, this claim suffers from group pleading issues with respect to the liability of each Defendant: it is not entirely clear how each Defendant is liable under ERISA.[10] *See* Section III.C.ii *supra*.

### iv. Count II: COBRA

In Count II, Plaintiffs allege that they should have been provided with health-care benefits pursuant to COBRA, and that following Plaintiffs' separation from employment, Defendants failed to provide Plaintiffs with information about their rights under COBRA, including the right to elect to continue health-care benefits through the employer. (Am. Compl. ¶¶ 79 & 80).

---

[9] It could be that Plaintiffs' claim regarding notice and election of coverage is duplicative of their claims brought in Count II under COBRA. Indeed, Plaintiffs' brief seems to indicate overlap. (Mov. Br. at 3).

[10] Alter ego liability aside, it is unclear which entity or entities employed each Plaintiff—a fact that may be relevant to any ERISA claim and to Plaintiffs' other claims. Plaintiffs seem to allege that Gerber was employed by both A&L and S&M; however, each entity seems to have had different roles that could affect which claims are relevant to each Defendant. (Am. Compl. ¶¶ 22–23 (alleging that A&L issued Gerber's pay checks and pay stubs and that S&M purchased Gerber's health insurance benefits)). As to Williams, Plaintiffs seemingly only allege that S&M was her employer. (*Id.* ¶ 24). Plaintiffs also allege that all entities—including the dismissed defendants—were "joint employers" of Plaintiffs (*id.* ¶ 21), but there are insufficient facts supporting that assertion.

"The COBRA amendments to [ERISA] provide employees with the option of continuing the insurance coverage they had under their employer's policy in circumstances where they would lose coverage as a result of a 'qualifying event.'" *Fama v. Design Assistance Corp.*, 520 F. App'x 119, 121 (3d Cir. 2013) (citing 29 U.S.C. § 1161). An employer must notify the administrator of the group health-care plan of a qualifying event within thirty days of that event's occurrence. 29 U.S.C. § 1166(a)(2). Within fourteen days thereafter, the administrator then must inform the covered employee of the qualifying event, and thus the option for continued coverage. *Id.* §§ 1166(a)(4) & (c). Accordingly, when an employer also is a plan administrator, the employer must provide the requisite notice to the employee within forty-four days of the qualifying event. 29 C.F.R. § 2590–606.4; *Fama*, 520 F. App'x at 121. A "qualifying event," as defined by COBRA, is a specifically enumerated event "which, but for the continuation coverage required under [COBRA], would result in the loss of coverage of a qualified beneficiary." 29 U.S.C. § 1163. One such qualifying event is the termination of the covered employee from his or her employment. *Id.* § 1163(2); *Fama*, 520 F. App'x at 121. If an administrator fails to furnish the requisite COBRA notification, ERISA allows for a statutory penalty of up to $100 a day. *Fama*, 520 F. App'x at 122 (citing 29 U.S.C. § 1132(c)(1)). "Whether the district court awards plaintiffs any monetary damages is a matter of discretion." *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1148 (3d Cir. 1993).

Again, Plaintiffs have not alleged in the first instance that the plan at issue was subject to COBRA's requirements. And again, the Court is left to determine the particulars of Plaintiffs' claim—specifically how each defendant is liable.[11] Before even reaching the issue of joint or alter-

---

[11] There is also a potential issue regarding Williams's standing to bring this claim. Unlike Gerber—who alleges that he was deprived of the opportunity to continue receiving benefits through his existing employer-based plan and "forced to purchase more expensive insurance which offers less coverage for certain period of time" (Am. Compl. ¶¶ 70–71)—Williams does not allege any concrete injury stemming from the lack of COBRA notice beyond alleging, in

14

ego liability, there are no allegations identifying the administrator of the plan. Thus, it is unclear whether Defendants failed as employers to provide notice to the plan administrator, and/or if they failed as administrators to furnish the notice to the employee. *Piscopo v. Pub. Serv. Elec. & Gas Co.*, 650 F. App'x 106, 110 (3d Cir. 2016) (explaining what the term "administrator" means and agreeing with the district court's determination that plaintiff failed to allege any facts demonstrating that his employer was the plan administrator). This distinction is important because it seems that claims for the statutory damages Plaintiffs seek are proper only against the plan administrator.[12] *Id.*

Even if the claim was properly stated, on the current record, the Court would not be inclined to exercise its discretion to award statutory damages. "Appropriate factors to be considered in making these decisions include 'bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary.'" *Romero v. SmithKline Beecham*, 309 F.3d 113, 120 (3d Cir. 2002) (quoting *Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 90 (2d Cir. 2001)). Plaintiffs acknowledge that the decision whether to award damages is a discretionary one, but do not elaborate on the factors the Court can consider. (Mov. Br. at 3–4).[13] Plaintiffs simply state that they should be awarded statutory damages "[b]ecause of the bad faith evident here." (*Id.*

---

a conclusory fashion, non-descript "financial harm" and "emotional distress" (*id.* ¶¶ 82–83). *See TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021) ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III.").

[12]  In their moving brief, Plaintiffs claim that they are entitled to per diem damages pursuant to § 1332(c)(7). (Mov. Br. at 3). But it seems that per diem damages for COBRA violations are addressed in § 1332(c)(1). Regardless, both provisions seem to provide for causes of action against administrators only.

[13]  The Court acknowledges that it limited Plaintiffs to a seven-page brief, and that this issue could have been explored in more detail in a longer brief. Although, no request was made for additional pages, and Plaintiffs filed their initial motion for default judgment without any accompanying brief in support. (D.E. No. 21). In any event, any discussion in the brief could not have cured what appears to be a pleading deficiency.

at 4). While there are perhaps allegations about Defendants' bad faith in terms of withholding certain monies for improper purposes, it is not clear what allegations support an inference of bad faith in connection with any failure to send COBRA notices after Plaintiffs' separations.

### v. *Count III: Fraudulent Filing of Tax Information Returns*

In Count III, Plaintiffs bring a claim under 26 U.S.C. § 7434 which provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." Plaintiffs allege that Defendants "filed a fraudulent information return (within the meaning of 26 U.S.C. § 6724(d)(1)(A)) in connection with payroll taxes associated with Plaintiff." (Am. Compl. ¶ 86). Section 6724(d)(1)(A) defines "information return" to mean any statement of the amount of payments to another person required by various sections of the Internal Revenue Code.

Plaintiffs allege that, in 2018, they believed that Defendants—again, alleged as a group—were making state and federal tax withholdings from Plaintiffs' pay, and yet Plaintiffs ultimately learned that Defendants never actually paid some of the withheld monies to the state and federal authorities. (Am. Compl. ¶¶ 62–64). Plaintiffs further allege that Gerber contacted the IRS about his concerns in December 2018, and he was told that his employer had until February 15, 2019, to pay. (*Id.* ¶ 65). However, Plaintiffs allege, upon information and belief, that Defendants have not paid the taxing authorities and instead pocketed the funds that were withheld for taxes. (*Id.* ¶ 66).

These allegations do not fit within the ambit of § 7434. For starters, Plaintiffs do not adequately allege that Defendants indeed filed an "information return," as that term is defined. Rather, Plaintiffs state in a conclusory fashion that Defendants filed an information return "within the meaning of" § 6724(d)(1)(A). Nor are there any allegations that any such information return

16

was fraudulent. Plaintiffs' allegations, at best, suggest that Defendants misrepresented *to Plaintiffs* that they were withholding money from their paychecks for tax purposes. But the fact that Defendants may have misrepresented the purpose of certain withholdings to Plaintiffs does not necessarily mean that the same or similar misrepresentations were made in any information return. Moreover, § 7434 specifies that the information return must be fraudulent "with respect to payments purported to be made to any other person." And there are no allegations in the Amended Complaint as to what Defendants misrepresented about *payments made to Plaintiffs* in an information return. *See Sirin v. Portx, Inc.*, No. 20-7853, 2020 WL 6194018, at *7 (D.N.J. Oct. 22, 2020) ("The Complaint does not allege that the returns filed misrepresented the amount of payments made to Plaintiffs. As such, it fails to plead a sufficient claim for violation of 29 U.S.C. § 7434(a), and Count V will accordingly be dismissed.").

In sum, the Court finds that all of Plaintiffs' federal claims are insufficiently pled and will not enter default judgment on those claims.[14] In light of the foregoing and the Court's analysis of its jurisdiction over the state law claims, the Court will give Plaintiffs two options for proceeding:

> (1) **Option 1**: Plaintiffs may seek to amend their complaint by filing a motion to amend with a proposed second amended complaint for the Court's review. The Court will review the proposed second amended complaint to ensure that amendment is not futile. If the second amended complaint remains deficient, the Court will not permit amendment, and Plaintiffs' claims may be dismissed and/or this matter may be closed. If the Court allows the amendment, Plaintiffs will be required to begin again the process for seeking default judgment, beginning with serving the second amended complaint on Defendants. Should Defendants again default, Plaintiffs may move for entry of a default judgment on the second amended complaint.

---

[14] The remaining factors as to propriety of default judgment—the prejudice suffered by the party seeking default, and the culpability of the party subject to default—do not require extended discussion here. As to prejudice, Plaintiffs are impaired from pursuing their claims and recovering any amounts owed. As to culpability, the Court's review of this factor is somewhat hampered by the lack of adversarial presentation on the issue. On the current record, however, Defendants have been served, and the record shows no good excuse for their failure to respond. And as to damages, in light of the Court's findings with respect to the insufficiency of Plaintiffs' claims, the Court does not assess Plaintiffs' claimed damages.

   (2) **Option 2**: Plaintiffs may opt to abandon their federal claims and request a remand to state court of the remaining state-law claims.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' motion for default judgment, and Plaintiff shall make a submission electing for either Option 1 or Option 2. An appropriate Order accompanies this Opinion.

**Date**: August 16, 2021

                 *s/Esther Salas*
                 **Esther Salas, U.S.D.J.**